IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JOAN DONALD<br><br>Defendant. | Criminal Action No. 21-cr-41-CFC |

## MEMORANDUM

Pending before me is Defendant Joan Donald's Motion for A Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A).  D.I. 43.  Section 3582(c)(1)(A) empowers the Court to modify a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" after considering the sentencing factors in 18 U.S.C. § 3553(a).  I granted Donald's subsequent request for appointment of counsel, D.I. 58, and her attorney filed supplemental briefing in support of the motion, D.I. 62; D.I. 65.  The government opposes Donald's motion. D.I. 51; D.I. 64.

I. **BACKGROUND**

A. **Defendant's Conviction**

Donald pleaded guilty in April 2022 to one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of tax evasion, in violation of 26 U.S.C. § 7201. D.I. 21 at 1. The wire fraud charge arose from Donald's theft of more than $1.1 million from her employer. D.I. 2 ¶¶ 1–10. The tax charge arose from Donald's failure to pay $223,416 in federal income taxes on the embezzled funds. D.I. 2 ¶¶ 11–12; D.I. 51 at 3.

On September 30, 2022, I sentenced Donald to 51 months of imprisonment, 3 years of supervised release, and restitution to her victim's estate and the IRS. D.I. 36. Donald has served approximately 25 months of this sentence. *See* D.I. 62 at 2. Her expected release date is August 4, 2025, Bureau of Prisons' Inmate Locator, https://www.bop.gov/inmateloc/?os=vb.&ref=app [https://perma.cc/BBX5-KXZA ], and according to counsel for the BOP, Donald may be released as early as May 31, 2025 if she continues to receive credits for good conduct at the same rate she has thus far, *see* D.I. 51-3.

B. **Defendant's Family Circumstances**

Donald first filed a motion for compassionate release on February 26, 2024 "to take care of [her] incapacitated parents," who were then 80 and 79 years old. D.I. 49 at 1. Donald's father suffered from Alzheimer's disease and her mother

was struggling to care for him due to severe osteoarthritis in her shoulders. D.I. 49 at 1; D.I. 50 at 7–8. Donald's father passed away just a few months after she filed her initial motion. D.I. 52.

Donald subsequently filed a supplemental memorandum which focuses only on her mother's declining health as an "extraordinary and compelling" basis for compassionate release. D.I. 62. A May 2024 medical record for Donald's mother states that she "has chronic conditions requiring additional assistance" that include osteoarthritis and atrial fibrillation. D.I. 62-1. According to Donald and other family members, Donald's mother struggles with stairs, has twice recently fallen, and has a "difficult time" performing "[b]asic daily activities" such as cooking, cleaning, and driving. D.I. 49 at 1; D.I. 62 at 9–10; D.I. 50 at 9–10, 12, 14.

Donald says that she is the "only one who can take care of" her mother. D.I. 49 at 1. Although her adult brother lives with their mother, he claims to be unavailable to help their mother because his work schedule is inflexible, his job requires travel, and their mother financially depends on his income. D.I. 50 at 14–15. Donald's adult daughter says that she is unavailable to help, because she lives 30 minutes away and works more than 60 hours a week. D.I. 50 at 9–11.

Donald says that she intends upon her release to return to full-time work at her previous job at the restaurant where her daughter works. D.I. 50 at 10. In letters submitted on Donald's behalf, the restaurant owners say they will schedule

3

Donald's shifts to accommodate Donald's caregiving for her mother. *See* D.I. 62–3 at 1; D.I. 62–2.

## II.   ANALYSIS

In general, a district court cannot modify a term of imprisonment once it has been imposed unless a defendant is eligible for a reduction of sentence pursuant to 18 U.S.C. § 3582(c). *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)); *United States v. Mainor*, 725 F. App'x 85, 86 (3d Cir. 2018). Section 3582 was amended in 2018 as part of the First Step Act. Pub. L. No. 115-391, Sec. 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018).

Before the enactment of the First Step Act, only the Director of the Bureau of Prisons could file a motion seeking a sentence reduction, sometimes also called "compassionate release." Now a motion may be filed by either the Director of the Bureau of Prisons or the defendant, but the defendant may not file a motion until "after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . " 18 U.S.C. § 3582(c)(1)(A). Here, Donald has filed the motion on her own behalf, and the government concedes that Donald has met the exhaustion requirement. D.I. 51 at 4.

4

Although the First Step Act changed the process by which inmates can request a reduced sentence, it did not alter the statutory standards that must be met for that request to be granted. *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("The First Step Act added the procedure for prisoner-initiated motions while leaving the rest of the compassionate-release framework unchanged."). The Sentencing Reform Act of 1984 established the statutory standard for reducing a sentence. Pub. L. No. 98-473, sec. 211, 98 Stat. 1837, 1987, 1998–99 (Oct. 12, 1984). Under that statute, a Court may reduce the term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Reform Act did not define what constitutes "extraordinary and compelling reasons," instead directing the Sentencing Commission to promulgate policy statements that do so. 28 U.S.C. §§ 994(a)(2)(C) and (t).

The policy statement of the Sentencing Commission that governs sentence reduction is set forth at U.S.S.G. § 1B1.13. Under that policy statement, a defendant is eligible for a sentence reduction if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court determines that three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as

provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018).

On November 1, 2023, the Sentencing Commission amended the Sentencing Guidelines to expand the descriptions of "extraordinary and compelling" circumstances meriting compassionate release under 18 U.S.C. § 3582(c)(1)(A) to include the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. 1B1.13.

The parties agree that I am bound to follow the Commission's amended guidelines as they apply to prisoner-initiated motions. D.I. 62 at 5 n.3; D.I. 51 at 8 n.5. Although the Third Circuit in *Andrews* found that Sentencing Commission guidelines issued in advance of the First Step Act were not binding on this court when considering prisoner-initiated motions, its decision anticipated that amendments made after the First Step Act may be binding. *United States v. Andrews*, 12 F.4th 255, 259 n.4 (3d Cir. 2021). *See United States v. Berry*, 2024 WL 3927260, at *10 (D.N.J. Aug. 23, 2024) and *United States v. Edmond*, 2024 WL 1684889, at *7 (M.D. Pa. Apr. 18, 2024) (discussing the delegation of authority by Congress to the Commission and the binding effect of the 2023 amendments upon prisoner-initiated motions).

I also consider in guiding my analysis the ordinary and legal meanings of "extraordinary" and "compelling." The ordinary, dictionary definition of "extraordinary" is "exceptional to a very marked extent" or "far from common," *Extraordinary*, MERRIAM WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/extraordinary, and the ordinary meaning of "compelling" is "tending to convince or convert by or as if by forcefulness of evidence," *Compelling*, MERRIAM WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/compelling. Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," *Extraordinary*, Black's Law Dictionary (12th ed. 2024), and "compelling need" as "[a] need so great that irreparable harm or injustice would result if it is not met," *Compelling Need*, Black's Law Dictionary (12th ed. 2024). *See also United States v. Andrews*, 2020 WL 4812626 (E.D. Pa. Aug. 19, 2020) (citing to Black's Law Dictionary), *aff'd*, 12 F. 4th 255.

Donald and the government dispute whether Donald's family circumstances are extraordinary and compelling, and whether the 18 USC § 3553(a) sentencing factors weigh in favor of a reduction of her sentence. The government does not deny that Donald would not pose a danger to the community were she to be released. 18 U.S.C. § 3582(c)(1)(A)(i).

7

Donald argues that she is the only available caretaker for her incapacitated mother.  D.I. 62 at 6–14.  Donald points to the newly amended policy statement, which includes "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" in the list of extraordinary and compelling circumstances.  D.I. 62 at 5 (citing § 1B1.13(b)(3)(C)).  Donald claims that her mother should be considered incapacitated because she "is unable to care for herself and struggles to walk unassisted."  D.I. 62 at 9 (internal quotation marks and citation omitted).  She also argues that she is the only available caregiver for her mother, because of her brother and daughter's demanding work hours and her daughter's commute.  D.I. 62 at 10.

The government responds that Donald has not carried her burden to show that her circumstances rise to an extraordinary and compelling reason for a shortened sentence.  The government argues that Donald is not the only available caretaker for her mother, because her brother and daughter also live nearby and work full-time, just as Donald plans to do upon her release.  D.I. 64 at 8–11.  Additionally, the government contends that Donald has not proven her mother to be incapacitated, since she is "not completely disabled, unable to care for herself at all, or bed or wheelchair bound," but instead suffers from the same "age-related problems" that "many . . . elderly parents of inmates are prone to face."  D.I. 64 at 7.

8

Defendants moving for compassionate release carry the burden of demonstrating an extraordinary and compelling reason justifying a sentence reduction. *See United States v. Kramer*, 2024 WL 313389, at *2 (3d Cir. Jan. 26, 2024). In this case, Donald has not provided sufficient evidence that she is the only available caretaker for her mother or that her mother is incapacitated for the purposes of U.S.S.G. 1B1.13.

First, Donald has failed to show that she is the only available caretaker for her mother. Courts in this Circuit have looked for guidance to BOP Program Statement No. 5050.50, which says that the necessary proof for sole availability is a "statement and letters of documentation that the inmate is the only family member capable of caring for the [parent]." *See, e.g., United States v. Doolittle*, 2020 WL 4188160, at *3 (D.N.J. July 21, 2020) (quoting BOP Program Statement § 5050.50). Donald claims that her brother, who lives with their mother, is unavailable because he works full-time at a job that requires travel and provides necessary financial support to their mother. D.I. 62 at 10. Likewise, she argues that her adult daughter cannot assist, because she works both as a gig worker and at the same restaurant to which Donald plans to return. D.I. 62 at 10; D.I. 50 at 5, 9–11; D.I. 62–2. Donald's daughter's employers have expressed their willingness to work around the Donald's caregiving schedule once she is released from prison,

9

although it is not clear whether they have not extended the same opportunity to her daughter. D.I. 62–2; D.I. 62–3.

The possibility that nearby adult family members may need to shift work commitments or hire aid to care for an elderly family member is not an extraordinary circumstance. Adult family members with full-time jobs are usually considered to be viable alternative caretakers, even when they live 40 minutes away, *United States v. Moore*, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020), or have other family commitments and health conditions of their own, *United States v. Duprey*, 2024 WL 3873938, at *2 n.1 (D.N.J. Aug. 19, 2024). Donald has failed to show that her brother and sister are incapable of caring for their mother, and therefore has not demonstrated an extraordinary and compelling reason justifying a sentence reduction. "Section 1B1.13(b)(3)(C) does not provide a potential basis for relief premised on preference—it does so based on necessity." *United States v. Taylor*, 2024 WL 3594315, at *6 (D.N.J. July 31, 2024).

Second, Donald has not shown that her mother is incapacitated. To carry this burden, defendants should provide evidence to the court by way of "adequate information and documentation . . . including, but not limited to, a statement and verifiable medical documentation regarding the individual's incapacitation . . ." *United States v. Walker*, 2024 WL 580152, at *3 n.2 (D.N.J. Feb. 13, 2024) (internal citation and alteration omitted).

10

The Sentencing Guidelines do not define incapacitation, but other courts have looked for guidance to Bureau of Prison guidelines for handling inmate compassionate release requests. *See, e.g., United States v. Doolittle*, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020). Those guidelines define incapacitation in similar contexts as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [parent] . . . is completely disabled, meaning that the [parent] . . . cannot carry on any self-care and is totally confined to a bed or chair." BOP Program Statement § 5050.50.

Donald has provided medical documentation that her mother "require[s] additional assistance" due to chronic conditions which cause "difficulty" with the tasks of daily living. D.I. 62–1. Difficulties with self-care, however, do not amount to inability or incapacity. *See, e.g.*, *United States v. Doolittle*, 2020 WL 4188160, at *3 (D.N.J. July 21, 2020) (defendant's wife's "difficulty" managing day-to-day without a caregiver do not rise to the level of incapacity); *United States v. Jones*, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021) (defendant's mother's need for additional assistance in her daily activities is not an extraordinary and compelling circumstance). And although Donald's mother is said to be at risk of another dangerous fall, Donald has not alleged, let alone proven, that her mother is "totally confined to a bed or chair." BOP Program Statement § 5050.50.

11

In sum, neither Donald's family members' alleged unavailability nor the health difficulties that Donald has described are alone or considered together extraordinary and compelling circumstances that warrant a sentence reduction under § 3582(c)(1)(A). I thus need not consider the factors set forth in § 3553.

### III. CONCLUSION

For the reasons stated above, I will deny Donald's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A).

The Court will issue an Order consistent with this Memorandum.

October 24, 2024                                          _____
                                                                  Chief Judge